## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Gary Allen Kachina,

                   Petitioner,                    **MEMORANDUM OPINION**
                                                   **AND ORDER**
      v.                                   Civ. No. 06-3661 ADM/JJG

State of Minnesota, and Joan Fabian,
Commissioner of Corrections,

                   Respondents.

_____

Gary Allen Kachina, *pro se*.

Linda K. Jenny, Esq., Assistant Hennepin County Attorney, Minneapolis, MN, on behalf of
Respondents.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for rulings on

Petitioner Gary Allen Kachina's ("Petitioner") Objections [Docket No. 20] to Magistrate Judge

Jeanne J. Graham's March 17, 2008, Report and Recommendation ("R&R") [Docket No. 19].

Judge Graham recommends that Petitioner's 28 U.S.C. § 2254 Petition for Writ of Habeas

Corpus [Docket No. 1] be denied.  For the reasons set forth below, Petitioner's Objections are

overruled.

## II. BACKGROUND

On the morning of May 10, 2004, the Brooklyn Park, Minnesota, homes of T.W. and

T.G. were burglarized.  T.W. had fallen asleep watching television in his living room.  Trial Tr.

[Docket No. 13 Parts II-VI] at 449-50.  Shortly before 5:00 a.m., T.W. was awakened by a

rustling sound and saw an intruder approximately five feet away in the hallway.  Id. at 450-51.

The television and a light in the adjacent kitchen were on, but the intruder's face was obscured in shadow.  Id. at 450, 470.  T.W. yelled at the intruder, who ran down the stairs and attempted to flee through a screen door.  Id. at 451-53.  After struggling with the lock for approximately five seconds, the intruder dove through the screen and fled.  Id. at 453, 471.  At 5:00 a.m., T.W. called 911 and described the intruder as a "[y]oung kid uh wearing a I think a white sweatshirt with red lettering on it and a red baseball cap."  Tr. of T.W. 911 Call [Docket No. 13 End of Part II].  T.W. stated that he did not get a good look at the intruder but the intruder "was white I think."  Id.

While the events at T.W.'s house occurred, T.G. was sleeping in her bedroom with the television on.  Trial Tr. at 615-16.  T.G. lived approximately eight blocks away from T.W.  Id. at 566-67.  Shortly before 5:26 a.m., T.G. awoke and saw a man at the foot of her bed.  Id. at 618.  T.G. asked the man who he was.  Id. at 620.  The man left the house without responding.  Id.  At 5:26 a.m., T.G. called 911.  She said she saw the man perfectly and that he was a "[w]hite male, um red hat, white and blue shirt and jeans.  No (inaudible), real skinny, low cut hair, thin face."  Tr. of T.G.'s 911 Call [Docket No. 13 End of Part II].

In response to T.W.'s 911 call, Brooklyn Park police officer Jeremy Halek ("Halek")and his police dog Nitro went to T.W.'s house.  Trial Tr. at 558.  Officer Kenneth Lehmann ("Lehmann") was on the scene and reported that the intruder fled through the screen door.  Id.  Nitro tracked the intruder's scent west from T.W.'s backyard for approximately ten minutes but lost it.  Id. at 558-62, 565.  While Nitro tried to reacquire the scent, Halek received a report of the burglary at T.G.'s home.  Id. at 564.  Because the description of the suspect in the second burglary matched the description of the suspect in the first burglary,  Halek drove with Nitro to

the area of the second burglary.  Id. at 564-65.

During the drive, Halek learned another officer had seen a man running in the area.  Id. at 567.  Halek parked his car and went with Nitro to the officer's location.  Id. at 568-69.  After picking up a fresh scent, Nitro led Halek to Petitioner, who was laying in a wooded area in a backyard.  Id. at 568-69, 571.  Halek observed that Petitioner was slender and was wearing a blue and white shirt.  Id. at 571.  Petitioner was not wearing a baseball cap.  Id. at 588. Petitioner disobeyed Halek's instruction to remain where he was and fled when Halek and Nitro approached.  Id. at 573.  On Halek's instruction, Nitro apprehended Petitioner by biting him.  Id. at 573-75.  Halek arrested Petitioner.  Id.

Police Officer Brice Sand ("Sand") arrived and searched Petitioner.  Id. at 717-18.  Sand found a credit card in T.W.'s name, a large amount of change, cash, cigarette lighters, cigarette packs, and a Festival Foods gift card.  Id. at 501-04, 718, 731.  Sand found a red baseball cap near where Halek arrested Petitioner.  Id. at 720.

Meanwhile, back at T.W.'s house, T.W. reported to Lehmann that the intruder had rifled through his wallet and that a Bose stereo, change, a carton of cigarettes, and cigarette lighters were missing.  Id. at 456-57.  T.W. later determined that money, a credit card, and a Festival Foods gift card were missing from his wallet.  Id.  While at T.W.'s house, Lehmann heard over his radio that a suspect had been apprehended in the second burglary.  Id. at 494-95.  Lehmann informed T.W. that officers had arrested a suspect in another burglary and that the person arrested was also a suspect in the burglary of T.W.'s house.  Id. at 474-76.

Lehmann drove T.W. to a location six blocks from his home where many squad cars and officers had gathered.  Id. at 459.  The officers asked T.W. if he could identify the man officers

had arrested.  Id. at 460.  T.W. asked whether the man had a cap.  Id.  The officers instructed

Petitioner to place the cap on.  Id.  T.W. identified Petitioner as the intruder who had entered his

house.  Id.

Shortly after Halek apprehended Petitioner, Officer Gregory Burstad ("Burstad") went to

T.G.'s home and told her that the officers had captured a suspect and that "[w]e got him."  Id. at

707.  Burstad informed T.G. that the suspect had committed another burglary before entering her

home.  Id. at 708.  Burstad told T.G. that "[o]ur dog made a biscuit out of him."  Id.  Another

officer told T.G. that a police dog had tracked the suspect's scent from her back door.  Trial Tr.

at 627.

The officers drove T.G. to a location three blocks from her house where the officers had

detained Petitioner in a squad car.  Id. at 627, 647.  The officers removed Petitioner, who was

wearing handcuffs, from the squad car.  Id. at 627-28.  T.G. identified Petitioner as the man who

was in her house.  Id. at 627-29.  T.G. stated "[t]hat's most definitely him."  Id. at 629.

Before trial, Petitioner moved to: (1) exclude T.W.'s and T.G.'s out-of-court

identifications and their in-court identifications; (2) dismiss the charges against him or exclude

certain police video and audio recordings of the police search and apprehension of him on the

ground that the prosecution failed to timely disclose the recordings; and (3) sever the two

burglary charges against him.  The trial judge denied Petitioner's motions.  Id. at 252, 264-65,

369-70.

Petitioner testified at trial that he was outside in the early hours of May 10, 2004, looking

for a convenience store to buy food before going to work.  Id. at 778, 785.  Petitioner testified he

was new to the area and he became lost.  Id. at 779.  Petitioner claimed that on his way home, he

found various items on the street, including the credit card, change, and the other items the police found when they arrested him.  Id. at 780.  Petitioner testified he was not wearing a red cap.  Id. at 787.

The jury convicted Petitioner of both counts of first degree burglary.  Id. at 974.  The trial judge sentenced Petitioner to fifty-three months.  Id. at 1006.  Petitioner appealed to the Minnesota Court of Appeals on the grounds that: (1) the two show-up identifications were improperly admitted and the in-court identification was tainted; (2) the trial court should have dismissed the charges or excluded the tapes because of the untimely disclosure; (3) the trial judge should have severed the charges; and (4) the trial judge should have granted a new trial because of prosecutorial misconduct.  Petitioner's Aug. 22, 2005 Br. [Docket No. 13 Part VII]; Petitioner's *Pro Se* Supp. Br. [Docket No. 13 Part VII].  On May 16, 2006, the Minnesota Court of Appeals affirmed Petitioner's conviction.  State v. Kachina, No. A05-208, 2006 WL 1320026 (Minn. Ct. App. May 16, 2006).  Petitioner petitioned the Minnesota Supreme Court for review of the identification issue.  Pet. for Review [Docket No. 13 Part VII].  On August 15, 2006, the Minnesota Supreme Court denied petitioner's petition for review.  Minn. S. Ct.'s Order [Docket No. 13 Part VII (Last Page)].

Petitioner filed his 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus on September 8, 2006.  Petitioner asserts that: (1) the admission of T.W.'s and T.G.'s identifications violated the Due Process Clause of the Fourteenth Amendment; (2) the prosecution failed to timely disclose exculpatory evidence; (3) the counts against him should have been severed; and (4) the prosecution committed misconduct during closing argument at his trial.

## III. DISCUSSION

**A.      Standard of Review**

The district court reviews de novo those portions of a R&R to which objection is made and "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C); see also D. Minn. R. 72.2(b).

Under 28 U.S.C. § 2254, federal court habeas review of state court criminal convictions resulting in incarceration is limited:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1).  Additionally, "a determination of a factual issue by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

**B.      Petitioner's Objections**

**1.      Severance and Prosecutorial Misconduct**

The State of Minnesota and Joan Fabian ("Respondents") argue that Petitioner's failure-to-disclose, severance, and prosecutorial misconduct claims should be dismissed because Petitioner failed to raise them in his petition for review in the Minnesota Supreme Court.  28 U.S.C. § 2254(b)(1)(A) states the general rule that a federal court cannot grant habeas relief

unless "the applicant has exhausted the remedies available in the courts of the State."  "A claim is considered exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim."  Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993).  "The petitioner must refer to a specific federal constitutional right, a particular constitutional provision, or a state case raising a pertinent federal constitutional issue." Id.  The United States Supreme held in Baldwin v. Reese, 541 U.S. 27, 32 (2004), that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."

Petitioner submitted a petition for review and an appendix to the Minnesota Supreme Court.  Petitioner's petition for review addressed only the improper identification issue.  The appendix included the Minnesota Court of Appeals's decision, the brief that Petitioner's counsel submitted to the Minnesota Court of Appeals, and a *pro se* supplemental brief that Petitioner submitted to the Minnesota Court of Appeals.  Petitioner's *pro se* supplemental brief raised the failure-to-disclose, severance, and prosecutorial misconduct issues.  Petitioner's *pro se* supplemental brief cited Brady v. Maryland, 373 U.S. 83 (1963) and Kyles v. Whitley, 514 U.S. 419 (1995) in support of his due process failure-to-disclose claim.  Petitioner's *pro se* brief did not identify a federal constitutional claim or rely on case law addressing federal issues regarding the severance and prosecutorial misconduct claims.

Judge Graham concluded that Petitioner failed to exhaust his severance and prosecutorial misconduct claims because the materials he submitted to the Minnesota Supreme Court did not adequately present a federal claim regarding those issues.  R&R at 9.  Judge Graham further

determined that Petitioner cannot seek review of those claims in the Minnesota courts, and that federal habeas review is barred because Petitioner has not demonstrated cause and prejudice to excuse his procedural default, nor has he demonstrated actual innocence.  R&R at 11.  This Court agrees with Judge Graham's reasoning.  Therefore, Petitioner's objections to dismissal of his severance and prosecutorial misconduct claims are overruled.

  **2.**  **Failure to Disclose Exculpatory Evidence**

  Although Petitioner's petition for review in the Minnesota Supreme Court addressed only the improper identification claim, Judge Graham concluded that the citations to <u>Brady</u> and <u>Kyles</u> in Petitioner's *pro se* supplemental brief submitted to the Minnesota Court of Appeals, and appended to Petitioner's petition for review in the Minnesota Supreme Court, sufficiently alerted the Minnesota Supreme Court to a federal <u>Brady</u> claim regarding the prosecution's failure to timely disclose exculpatory evidence.  The United States Supreme Court's decision in <u>Baldwin</u> implies that Petitioner may not have sufficiently alerted the Minnesota Supreme Court that he sought review of a claim under <u>Brady</u>.  However, it is unnecessary to decide this issue because the Court agrees with Judge Graham's conclusion that Petitioner's <u>Brady</u> claim fails on its merits.

  Petitioner complains that the prosecution failed to timely disclose police videotapes of Petitioner's arrest and audiotapes of the radio communications during the police officers' search for and arrest of Petitioner.  The key factors relevant to a <u>Brady</u> analysis are: (1) whether the prosecution suppressed evidence; (2) whether the evidence was material and favorable to the defendant; and (3) whether prejudice occurred.  <u>Collier v. Norris</u>, 485 F.3d 415, 422 (8th Cir. 2007).

The prosecution disclosed the tapes the day before Petitioner's trial was scheduled to begin.  Trial Tr. at 107.  On August 2, 2004, Petitioner moved for dismissal of the charges or exclusion of the new evidence as a sanction for the late disclosure.  Id. at 113-14.  The trial court gave counsel additional time to review the evidence before hearing oral argument on the issue. Id. at 131.  The trial judge denied Petitioner's motion for the sanctions of dismissal or exclusion of the evidence but counsel was effectively given additional time to review the evidence because a new jury was impaneled and the trial did not commence until August 11, 2004.  Id. at 264-65, 369-370, 397.

Both the trial court and the Minnesota Court of Appeals concluded that Petitioner did not suffer prejudice from the late disclosure of the tapes because Petitioner was afforded an adequate opportunity to review the tapes prior to trial.  Id. at 264-65, 369-70; Kachina, 2006 WL 1320026 at *5.  This Court finds that the Minnesota Court of Appeals's decision was neither contrary to nor an unreasonable application of Brady.

Petitioner also argues that the police intentionally destroyed certain tapes from the morning of his arrest.  The trial court found the Brooklyn Park police inadvertently destroyed the tapes under its policy of re-using tapes.  Trial Tr. at 370.  The trial court denied sanctions for the destruction because there was no evidence the Brooklyn Park police intentionally destroyed the tapes.  Id.  The Minnesota Court of Appeals affirmed.  Kachina, 2006 WL 1320026 at *5.  On federal habeas review, this Court finds that the Minnesota Court of Appeals's decision was not an unreasonable application of federal law nor did it involve an unreasonable determination of the facts.  Petitioner's objection to the dismissal of his Brady claims is overruled.

### 3.    Identifications

Petitioner argues that the admission at trial of T.W.'s and T.G.'s out-of-court

identifications and T.G.'s in-court identification violated the Due Process Clause of the

Fourteenth Amendment.  "In order to determine if identification testimony is admissible, the trial

court must first determine if the pretrial identification technique was impermissibly suggestive."

Manning v. Bowersox, 510 F.3d 571, 577 (8th Cir. 2002).  "If so, then the court must decide

whether, under the totality of the circumstances, the suggestive confrontation created a

substantial likelihood of irreparable misidentification."  Griffin v. Delo, 33 F.3d 895, 908 (8th

Cir. 1994).  Factors that courts consider "include the opportunity of the witness to view the

criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior

description of the criminal, the level of certainty demonstrated at the confrontation, and the time

between the crime and the confrontation."  Manson v. Brathwaite, 432 U.S. 98, 114 (1977).

### a.    T.W.'s Out-of-Court Identification

The Minnesota Court of Appeals determined that Brooklyn Park police used

unnecessarily suggestive techniques for T.W.'s identification because: (1) Petitioner was

handcuffed; (2) police told T.W. they had someone in custody who matched T.W.'s description

of the suspect; (3) police told T.W. that Petitioner broke into another home nearby; and (4)

police told T.W. that a canine unit chased and apprehended Petitioner.  Kachina, 2006 WL

1320026 at *3.  Based on the totality of the circumstances, however, the Minnesota Court of

Appeals concluded that the "verdict is clearly not attributable to the improper show-up."  Id. at

*4.  The Minnesota Court of Appeals erroneously determined that T.W. had made an

independent in-court identification, and relied on that determination in its analysis of the

10

admissibility of T.W.'s show-up identification.  Id. at *4.  Respondents concede that the

Minnesota Court of Appeals's factual determination was erroneous.  Resps.' Mem. [Docket No.

11] at 23-24.  Based on the record, Petitioner has overcome the presumption that the Minnesota

Court of Appeals's factual determination was correct.

However, "it does not necessarily follow that the state court adjudication was based on an

unreasonable determination of the facts because [28 U.S.C. § 2254(d)(2)] instructs federal courts

to evaluate the reasonableness of the state court decision 'in light of the evidence presented in

the state court proceeding.'" Collier, 485 F.3d at 423.  Although the trial judge concluded that

T.W.'s show-up identification was not unnecessarily suggestive, the trial judge held that even if

the show-up identification was unnecessarily suggestive, it was admissible under the totality of

the circumstances because: (1) T.W. viewed the intruder for approximately forty-five seconds;[1]

(2) T.W.'s undivided attention was on the intruder; (3) only approximately thirty minutes

elapsed between T.W.'s encounter with the intruder and his identification of Petitioner; and (4)

T.W. was certain Petitioner was the intruder when Petitioner put the red cap on.  Trial Tr. 249-

52.  The Minnesota Court of Appeals agreed with the trial judge's analysis.

Judge Graham concluded that "[t]he state courts properly identified the applicable federal

law, and their totality of the circumstances analyses, while perhaps arguable, were not

objectively unreasonable."  R&R at 15.  After reviewing the record, this Court endorses Judge

Graham's analysis.  Therefore, Petitioner's objection regarding the admission of T.W.'s out-of-

court show-up identification is overruled.

---

[1] T.W. testified at the pre-trial hearing that approximately forty-five seconds elapsed
between when he woke up and when the intruder dove through the screen door.  Trial Tr. at 149.

11

**b.**     **T.G.'s Out-of-Court and In-Court Identifications**

The prosecution conceded at trial that the circumstances of T.G.'s out-of-court identification were unnecessarily suggestive.  Tr. at 249.  The trial court determined that T.G.'s out-of-court and in-court identifications were admissible under the totality of the circumstances because T.G. had a close view of the intruder, her description was accurate, her level of certainty was high, and only a short time elapsed between her encounter with the intruder and her show-up identification.  Id. at 666-67.  The Minnesota Court of Appeals agreed that T.G.'s out-of-court identification was reliable.  Kachina, 2006 WL 1320026 at *4.  The Minnesota Court of Appeals did not address T.G.'s in-court identification.

After reviewing the record, this Court agrees with Judge Graham's determination that the admission of T.G.'s out-of-court and in-court identifications was neither contrary to clearly established federal law nor was it objectively unreasonable.  Additionally, the state court decisions regarding the admissibility of T.G.'s identifications did not rely on unreasonable factual determinations.  Petitioner's objections regarding the admissibility of T.G.'s identifications are overruled.

**IV. CONCLUSION**

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.  Petitioner Gary Allen Kachina's Objections [Docket No. 20] are **OVERRULED**;

2.  Magistrate Judge Jeanne J. Graham's March 17, 2008, Report and

    Recommendation [Docket No. 19] is **ADOPTED**; and

3.  Petitioner's Petition for Writ of Habeas Corpus [Docket No. 1] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

                                        BY THE COURT:


                                        _____s/Ann D. Montgomery_____
                                        ANN D. MONTGOMERY
                                        U.S. DISTRICT JUDGE

Dated:  June 19, 2008.

13